UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MICHELLE JOHNSON PETERSSEN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROYAL UNITED MORTGAGE LLC, an Indiana company<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Michelle Johnson Peterssen ("Plaintiff Peterssen" or "Peterssen") brings this Class Action Complaint and Demand for Jury Trial against Defendant Royal United Mortgage LLC ("Defendant Royal United" or "Royal United") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls *without consent* (1) to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"), (2) to consumers who have demanded that the calls stop, and (3) to consumers before 8am. Plaintiff Peterssen, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.  Plaintiff Peterssen is a resident of Miami Lakes, Florida.

2.  Defendant Royal United is an Indiana registered company headquartered in Indianapolis, Indiana. Defendant Royal United conducts business throughout this District, in Florida, and throughout the United States.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant since the Defendant called Plaintiff in this District on the Plaintiff's Florida cell phone number. Defendant's wrongful conduct of calling the Plaintiff was directed to and received by Plaintiff in this District.

**INTRODUCTION**

5. As the Supreme Court explained at the end of its term last year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in March 2021 alone, at a rate of 159.4 million per day. www.robocallindex.com.

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. Royal United provides mortgage and refinancing loans to consumers throughout the United States.[3]

17. Royal United relies on telemarketing to generate leads.[4]

18. Royal United employees engage in cold calling in order to generate business.

19. Former and current Royal United employees have posted complaints online about the unsolicited telemarketing Royal United engages and requires:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.royalunitedmortgage.com/who-we-are
[4] https://www.royalunitedmortgage.com/lendingtree

### Hardly any integrity

Mortgage Loan Originator (Current Employee) - Indianapolis, IN - January 2, 2021

After licensing, everything becomes a blur. They hired me as a "Manager in Training" but that literally isn't a thing in the company. You have the same career path as every other employee, which is fine, but you're baited in with a false expectation. Secondly, they throw you on the phones with literally nothing, and expect you to run people's credit for bonuses. They then come back and tell you that you're doing everything wrong, and try to teach you after you've practiced incorrect habits for at least a week. The training that is provided is very lackluster even though the trainers seem to be great people. In my opinion, the commission they tell you you'd make one day isn't worth cold calling over 400 people a day starting at 7AM hoping at least 3 answer so you can convince them that you're not a scam.

✓ **Pros**
A lot of people make more than average wage

✗ **Cons**
There's little integrity after you pass licensing [5]

### Deceitful job description and interview

Loan Originator (Former Employee) - Indianapolis, IN - September 13, 2020

They lie to you when you interview. They never tell you your job is phone sales/telemarketing. You are required to dial the phone 350+ a day!!! In the interview I was told 60% of my job would be the phone. It's 100% of the job.

They say they give you warm leads which is false. They buy 15,000 leads a week from lending tree, which 99% of the leads are people who just wanted to know the average rate right now.

Do not work here unless you want to work 7 days a week, 45+ hours and annoy the mess out of people. Would give this place zero stars if possible. [6]

---

[5] https://www.indeed.com/cmp/Royal-United-Mortgage/reviews
[6] Id.



20. In the above job posting, the Royal United employee notes that when the team is not generating leads well, the cold calling shifts start at 7am and go until 3pm. This cold calling regimen violates the Federal regulation 47 C.F.R. § 64.1200 which prohibits individual or entities to place solicitation calls before 8am.

21. In placing unsolicited calls to consumers, Royal United is placing multiple calls to phone numbers that are registered on the DNC, such as Plaintiff's number.

---

[7] https://www.glassdoor.com/Reviews/Royal-United-Mortgage-Reviews-E235021_P2.htm?filter.iso3Language=eng
[8] https://www.glassdoor.com/Reviews/Employee-Review-Royal-United-Mortgage-RVW21679783.htm

5

22. To make matters worse, Royal United continues to place multiple calls to phone numbers after consumers explicitly tell Royal United employees to stop calling like in the Plaintiff's experience.

23. Consumers have posted complaints online about receiving unsolicited telemarketing calls from Royal United:

**Better Business Bureau Complaints:**

- "These dirtbags called my cell at 7am to try and sell me something. What kind of legitimate business calls people at 7am? Then, after I requested to be removed from the list, they tried calling back multiple times from different numbers."[9]
- "I filled out a form on lending Tree and did not know the company would contact me. The calls start within 5 minutes of the form being submitted. I ignored the first call but received 5-6 calls within a few minutes. I decided not to work with the company just based off the number calls I received which felt like harassment. I answered the sixth call and told the representative that I was not interested and to please stop calling. Since 10/12/20 I have received 31 calls from this company. Even when I blocked the latest number the calls continue."[10]

**Facebook Complaints:**

- "Just called me 5 TIMES IN less than 30 minutes!! Waking my entire family up at 6:21AM! I NEVER asked to be called."[11]
- "I just filed a complaint with the FCC after receiving 6 calls in a row. The first two I did not answer. I told the representative Ryan to take me off the list and he thought it would be a good business practice to have 4 of his coworkers all call back to back at 10am on a Sunday morning. After filing the FCC complaint I checked my email and now they have sent 6 separate emails saying "oh even though you have asked us not to call lets talk by email" so now I will be pursuing legal action."[12]

**Yelp Complaints:**

- "High pressure sales tactics. The strategy seems to be, call you nonstop as soon as you inquire about rates, waste as much of your time as possible, trash other lenders, then hit you with MUCH higher closing costs than initially quoted."[13]

---

[9] https://www.bbb.org/us/in/indianapolis/profile/mortgage-lenders/royal-united-mortgage-llc-0382-90002256/complaints
[10] Id.
[11] https://www.facebook.com/RoyalUnitedMortgage/reviews/?ref=page_internal
[12] Id.
[13] https://www.yelp.com/biz/royal-united-mortgage-indianapolis-2?start=10

6

- "Four or five days ago I received a call from Royal, United Mortgage trying to sell me a mortgage or refinance. I said thank you I'm not interested and hung up. That day I got over 50 more calls, all from 917 or 631 area codes and each day since have gotten over two dozen calls from 7AM to after 7PM. If this isn't harassment, what is? I've blocked each call when possible but as of five minutes ago they continue."[14]
- "Didn't even leave my number but when I replied to an email some how they got my number and call no kidding 15 times in 5mins. Who does that so I block the number they called with all kinds of different numbers. How do get someone's number by replying to an email that's crazy."[15]
- "Calls at 4:21 AM, 6:04AM..... if I were actually in the time zone that my phone number is from it would be 2:21 AM. How's that working for you?"[16]

24. In response to these calls, Plaintiff Peterssen files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF PETERSSEN'S ALLEGATIONS

25. Plaintiff Peterssen registered her phone number on the DNC on March 8, 2016.

26. Plaintiff Peterssen's phone number is not associated with a business and is used for personal use only.

27. In mid-2020, Plaintiff went online to find out about refinancing rates.

28. Plaintiff received numerous solicitation calls from Royal United regarding refinancing after submitting her online inquiry.

29. After speaking to many Royal United employees, Plaintiff decided that she would not do business with Royal United and instructed numerous sales employees to stop calling her.

30. After having to repeat her stop call requests several times to several different Royal United agents, the calls finally stopped.

31. Many months later, in the morning of March 9, 2021, Plaintiff went online to look up interest rates.

---

[14] https://www.yelp.com/biz/royal-united-mortgage-indianapolis-2?start=10
[15] *Id.*
[16] *Id.*

7

32. Plaintiff visited what she believes may have been RoyalUnitedMortgage.com but did not fill out any forms or provide her phone number on their website.

33. Plaintiff quickly closed her internet browser when she saw the name Royal United Mortgage come up on her screen.

34. That same morning on March 9, 2021 at 7:05 AM, Plaintiff received an unsolicited telemarketing call from Royal United from 317-936-3503. Plaintiff answered this call and a Royal United Mortgage employee solicited Royal United services to the Plaintiff. The Plaintiff interrupted the employee and said she was not interested in speaking to anyone from Royal United and demanded that Royal United stop calling her.

35. At 7:09 AM on March 9, 2021, Plaintiff received a second unsolicited call from a different Royal United employee from the phone number 317-936-3482. Plaintiff answered this call. A new Royal United employee tried to solicit her for Royal United services. Plaintiff told the Royal United employee to stop calling her and ended the call.

36. Plaintiff received a 3rd unsolicited call on March 9, 2021 at 7:14 AM from 317-936-3499 from another Royal United employee to solicit her for Royal United's services. Plaintiff answered this call. After the employee stated that they were from Royal United Mortgage, Plaintiff told the employee that she was upset about receiving such early morning calls, that she had told the previous Royal United callers to stop calling, and that she would report Royal United. The employee said that she did not care and hung up the phone.

37. The unauthorized solicitation telephone calls that Plaintiff received from Royal United, as alleged herein, have harmed Plaintiff Peterssen in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

38. Seeking redress for these injuries, Plaintiff Peterssen, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited telemarketing calls to telephone numbers that

are registered on the DNC and prohibits unsolicited telemarketing calls to consumers who asked for the calls to stop.

## CLASS ALLEGATIONS

39. Plaintiff Peterssen brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims it obtained the person's number in substantially the same manner it obtained Plaintiff's number.
>
> **Early/Late Calls Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called (2) before 8am or after 9pm.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) for substantially the same reason Defendant called Plaintiff, including (4) at least one call after they requested that Defendant stop calling.

40. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Peterssen anticipates the need to amend the Class definitions following appropriate discovery.

41. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

42. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether the Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(b) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(c) whether the Defendant called Plaintiff and other consumers before 8am or after 9pm;

(d) whether Defendant's conduct violated the TCPA; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

43. **Adequate Representation**: Plaintiff Peterssen will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Peterssen has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Peterssen and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Peterssen nor her counsel have any interest adverse to the Classes.

44. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect

to the Classes as wholes, not on facts or law applicable only to Plaintiff Peterssen. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>**FIRST CLAIM FOR RELIEF**</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Peterssen and the Do Not Registry Class)**

45. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

46. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

47. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

48. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Peterssen and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

49. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Peterssen and the Do

11

Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

50. As a result of Defendant's conduct as alleged herein, Plaintiff Peterssen and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

51. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Peterssen and the Internal Do Not Call Class)**

52. Plaintiff repeats and realleges paragraphs 1-44 of this Complaint and incorporates them by reference herein.

53. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a

reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

54. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class on behalf of the Defendant without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

55. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

13

56. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**THIRD CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Peterssen and the Early/Late Calls Class)**

57. Plaintiff repeats and realleges paragraphs 1-44 of this Complaint and incorporates them by reference herein.

58. Under 47 C.F.R. § 64.1200(c) "No personal or entity shall initiate any telephone solicitation to: (1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).

59. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

60. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Peterssen and the Early/Late Calls Class members ether before 8am or after 9pm.

61. As a result of Defendant's conduct as alleged herein, Plaintiff Peterssen and the Early/Late Calls Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

62. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Early/Late Calls Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Peterssen, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Peterssen as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Peterssen requests a jury trial.

DATED this 28th day of April, 2021.

**MICHELLE JOHNSON PETERSSEN**,
individually and on behalf of all others similarly situated,

/s/ Stefan Coleman
Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A. 201 S.
Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*